UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

MOHAMMAD FARUK BIN MOHAMAD SALIM                    PETITIONER

v.                                                  No. 5:25-cv-227-BJB

MARKWAYNE MULLIN, ET AL.                            RESPONDENTS

\* \* \* \* \*

ORDER

According to his habeas petition, Mohammad Salim lost his green card after a conviction for conspiracy to commit armed robbery.  Petition (DN 1) ¶¶ 4, 16–18.  An immigration judge ordered him removed, but ruled that he could not (at least for now) be removed to the country of his birth (Malaysia) or citizenship (Burma) under the Convention Against Torture.  ¶¶ 13, 18; *see* Removal Order (DN 1-5).  That order "became administratively final on June 2, 2025" when Salim declined to take an appeal.  ¶ 1.  "A deportation officer recommended Petitioner's continued detention" until he could be removed.  Government Response to Motion for Ruling (DN 23) at 1.  After six months of detention passed, Salim applied on December 23 for a writ of habeas corpus from this Court.  *See* Petition at 9.

Since the immigration judge's decision, however, Salim's detention has come under Executive Branch review.  "On November 23," one month before Salim sought habeas, "ERO served [him] a Notice … advising him that his custody status would be reviewed and that he could submit evidence in support of his release."  Declaration of Carly Schilling, Supervisory Detention and Deportation Officer assigned to Chicago ICE Field Office of Enforcement and Removal Operations (DN 23-1) ¶ 6.  Soon after Salim asked for habeas, "the ERO Chicago Field Office Director … authorized Petitioner's continued detention."  *Id.*  About a week after that, ERO conducted a *second* review "and the reviewing deportation officer recommended Petitioner's continued detention."  *Id.* ¶ 7.  That decision, however, "was elevated to ERO headquarters for review and remains pending decision."  *Id.*  Meanwhile, the Government "is currently investigating third country removal options for Petitioner."  *Id.* ¶ 8.

"Given the recent [review] and Petitioner's criminal history," the Government asked the Court to "allow the Agency to determine whether it will release or continue to detain Petitioner."  Response to Motion for Summary Judgment (DN 20) at 4.  That

1

makes sense.  Beyond the presumptive 90-day period in which removal orders should ordinarily be executed, *see* 8 U.S.C. § 1231(a)(1)(A), the Government may continue to detain "[a]n alien ordered removed … who has been determined by the Attorney General to be a risk to the community," § 1231(a)(6).  Even for this reason, the Supreme Court has held, detention can't go on forever.  *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (limiting "post-removal-period detention to a period reasonably necessary to bring about [the] alien's removal from the United States").  But the Government may detain a person convicted of a violent crime, and who poses a "danger to the community," *id.* at 690–91, so long as "removal is reasonably foreseeable," *id.* at 700.  "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

In his petition, Salim asserted that removal wasn't "reasonably foreseeable" because he cannot go to Malaysia or Burma and "Respondents have not shown any effort or ability to remove the Petitioner to any other country."  ¶ 33.  As of the Government's February status report, however—which Salim gives the Court no reason to doubt—agency officials are working to identify a suitable third country.  Schilling Declaration ¶ 8.  True, Salim says, the Government "has produced no acceptances, travel documents, timelines, or scheduled removal."  Proposed Order (DN 21-1) at 4.  But the mere fact that the Government hasn't given Salim documents doesn't prove much in light of the Schilling declaration.

On the other hand, the Government's position has continued to evolve throughout this litigation.  Its first response to the Court's show-cause order explained only that efforts to find a third country had happened in the past and proven "unsuccessful."  Response (DN 9) at 3.  Given that, the Government "concede[d]" that "there is currently no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Given the Government's update that it *is* actively looking for a third country, however, and its request that the Court withhold a decision because Salim's detention is currently under agency review, the Court asked the parties for status reports in mid-March.  *See* DN 25.

Under the avoidant construction of § 1231 that the Court adopted in *Zadvydas*, the statute only authorizes detention beyond six months (even of someone dangerous) if the Government carries a litigation burden to show that it will remove the alien within a period that "shrink[s]" "as the period of prior postremoval confinement grows."  533 U.S. at 701.

## ORDER

The Court directs the Government, no later than **May 7, 2026**, to file a report showing that it has a plan to remove Salim.  If it does not, the Court will rest on the Government's initial concession and grant the petition.